**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|                                         |   |                        |
|-----------------------------------------|---|------------------------|
|                                         | * |                        |
| **CHRISTINE WARD,**                     | * |                        |
|                                         | * |                        |
| **Plaintiff,**                          | * | **UNDER SEAL**         |
|                                         | * |                        |
| **v.**                                  | * | **Civil No. SAG-23-2147** |
|                                         | * |                        |
| **RELIANCE STANDARD LIFE**              | * |                        |
| **INSURANCE COMPANY,**                  | * |                        |
|                                         | * |                        |
| **Defendant.**                          | * |                        |
|                                         | * |                        |
|                                         | * |                        |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**<u>MEMORANDUM OPINION</u>**

Christine Ward ("Plaintiff") filed a Complaint on August 9, 2023, against Defendant Reliance Standard Life Insurance Company ("Reliance Standard"), appealing Reliance Standard's denial of long-term disability ("LTD") benefits under an ERISA employee benefit plan (the "Plan"). ECF 1. The parties have each filed dispositive motions: Plaintiff filed a motion for judgment pursuant to Fed. R. Civ. P. 52 or, in the alternative, for summary judgment, ECF 11, with proposed findings of fact and a supporting memorandum, ECF 12, 13. Reliance Standard filed a cross-motion for summary judgment, ECF 27, with responsive findings of fact and a supporting memorandum, ECF 28, 29. This Court has carefully reviewed all of the replies and related filings, including the administrative record in the case. ECF 20–26, 30–33. No hearing is necessary to resolve the pending motions. *See* Loc. Rule 105.6 (D. Md. 2023). For the reasons that follow, this Court will construe the motions as seeking a bench trial on the paper record, as

permitted by Fed. R. Civ. P. 52, will rule in favor of Plaintiff, and will remand the matter to Reliance Standard for further proceedings.[1]

## I.     Findings of Fact

Plaintiff began working for The MITRE Corporation ("MITRE") on May 16, 2011, eventually becoming a Senior Principal Health Systems Engineer. AR 0394–395, 0479, 0453. In that capacity, she provided technical and strategic direction and management, strategic planning, IT modernization and transformation, and a host of other high-level IT-related activities for Medicare, Medicaid, and the Department of Defense. ECF 12 ¶ 4 (undisputed). As one of her employment benefits, MITRE provided Plaintiff LTD insurance coverage under an insurance policy underwritten by Reliance Standard. AR 0396, AR 0001–35. The policy is governed by the Employee Retirement Income Security Act ("ERISA"). AR 0001.

Some relevant provisions of the policy are as follows:

"Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness: during the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her regular occupation[.][2]

AR 0010.

TERMINATION OF MONTHLY BENEFIT: The Monthly Benefit will stop on the earliest of:
(1) The date the Insured ceases to be Totally Disabled;
(2) The date the Insured dies;
(3) The Maximum duration of Benefits, as shown on the Schedule of Benefits page, has ended; or
(4) The date the Insured fails to furnish the required proof of Total Disability.

AR 0020.

---

[1] The parties will have one week to review this memorandum opinion, confer, and jointly suggest redactions that should be made before this opinion is publicly filed.

[2] The Policy does not appear to define "regular occupation."

Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

AR 0014.

Ward stopped working at MITRE on January 6, 2021. AR 0054, 0395. After she received a period of short-term disability benefits, Reliance Standard approved Plaintiff to receive LTD benefits as of July 30, 2021. AR 0323–25. In conjunction with her application for LTD benefits, Ward submitted attending physician statements from her primary care physician, Dr. Diane Pressman, who certified Plaintiff's disability from "post-acute Covid syndrome with symptoms of migraines, fatigue, chronic cough, and dyspnea." AR 0459–60. In a follow-up statement, Dr. Pressman listed Plaintiff's symptoms as "chronic daily debilitating migraines, chronic debilitating fatigue, dyspnea, [and] chronic cough due to post-acute COVID syndrome." AR 0568–69. Reliance Standard nurse Jane Sweeney, RN, conducted a medical review of Plaintiff's application on June 2, 2021, and concluded that the medical records established Plaintiff's "lack of work function from date of loss ongoing based on post COVID-19 pneumonia," while acknowledging that "Post COVID-19 recovery is variable and difficult to predict." AR 0130.

Plaintiff also filed for Social Security disability benefits in this same period. Reliance Standard referred Plaintiff to Allsup, Inc. ("Allsup") to represent her before the Social Security Administration ("SSA"). AR 0055–56. With Allsup's assistance, the SSA approved Plaintiff's application for Social Security disability benefits on March 11, 2022. AR 0057, 0909–14. The award of Social Security disability benefits reduced the amount of the monthly LTD benefits Reliance Standard had to pay to Plaintiff. AR 0908, 0348. In approving Plaintiff's application,

SSA cited her "neurocognitive disorders" and found that she would have required a limitation to "simple work." ECF 12-1, 12-2.

Plaintiff submitted a wide variety of medical records to Reliance Standard in support of her application and over the course of its various reviews. Some of the records most pertinent to an assessment of Plaintiff's cognitive functioning are summarized below.

On April 28, 2021, Dr. Garcia-Serrablo, Psy.D., performed a neuropsychological exam, AR 0679–85, which showed that Plaintiff's new verbal learning/recent memory was diminished due to "inefficient coding," her executive function was diminished, and that she had "impaired planning" capabilities.

Upon review of that and other reports, a Reliance Standard medical director, Karen M. Meissler, Psy.D., indicated in Plaintiff's file on June 28, 2021, that: "Given job (Sr. Principal Health Systems Engineer) requires good attention, concentration and planning, findings would support deficits sufficient to preclude working." AR 0132. She also identified the plan forward: "Examiner to [follow-up] and verify that [Plaintiff] is in treatment for all conditions . . . and [follow-up] for retesting in 6 months. Reasonable to support for 6 month[s] beyond 4/28/21 to engage in all treatment and get retested." *Id.* Shortly thereafter, Reliance Standard initially approved Plaintiff to receive LTD benefits.

On November 16, 2021, Plaintiff went for an initial appointment with Dr. Daniel Sova, who specializes in physical medicine and rehabilitation. AR 0960–69. In the section of the report summarizing his examination findings, Dr. Sova indicated:

Cognition, emotion and behavior:
Overall Cognitive Status: intact
Orientation Level: Alert and Oriented X3 (time, place, person)
Following Commands: Follows simple one-step and multi-step commands, and directions without difficulty
Evidence of aphasia, agnosia, and neglect is absent.

Behavior is appropriate. No signs of agitation or motor restlessness.

AR 0964. Nevertheless, Dr. Sova, who specializes in physical medicine, noted that he "will refer to SLP [Speech Language Pathology] for cognitive evaluation." AR 0965.

On December 15, 2021, a Reliance Standard nurse, Guy Chabot, RN, opined that Plaintiff "lacks work function for an indefinite duration" and had a duration/clinical outlook that was "unpredictable from this clinical perspective." AR 0028.

Plaintiff had her cognitive evaluation with a speech language pathologist ("SLP") on February 2, 2022. AR 1131. Her cognitive testing showed abnormal results and resulted in a diagnosis of "moderate cognitive impairment." AR 1131–36. Plaintiff began attending cognitive therapy on February 14, 2022, AR 1145–47, and the notes from that appointment stated: "The patient has good insight and demonstrates moderate deficits in recall and attention, often requiring scaffolding and breakdown for task execution." AR 1146. The session triggered Plaintiff's migraines. AR 1148. At a third therapy appointment on February 24, 2022, the therapist again affirmed that: "The patient has good insight and demonstrates deficits in recall and attention, often requiring scaffolding and breakdown for task execution. This date, breaks were implemented throughout session, in conjunction with cognitive pacing scale in effort to prevent fatigue." AR 1163. At a fourth therapy appointment on March 7, 2022, the therapist noted: "The patient has good insight and demonstrates deficits in recall and attention, often requiring scaffolding and breakdown for task execution. She continues to experience chronic fatigue, requiring intermittent rest breaks and hydration throughout session. To aid tolerance, treatment activities are presented in chunks with varying complexity." AR 1418. The notes reflected that there would be a break in therapy since Plaintiff was scheduled for a round of injections.

5

Plaintiff returned for SLP therapy on April 4, 2022, and additional cognitive testing ensued. AR 1177–80. The therapist's notes state: "As patient presents with dysautonomia and post exertional malaise symptoms, her POC has been limited with fatigue and chronic headache negatively influencing task tolerance and progress. Given the above presentation, literature found that overexertion may be detrimental to recovery, with cognitive pacing strategies deemed the safest approach to navigate triggers of symptoms." AR 1179. The therapist noted that Plaintiff would have a therapeutic break and would return for reevaluation after some number of months. *Id.* At that time, most of the SLP therapy goals had not been met. *Id.*

A few weeks later, on May 24, 2022, Plaintiff again saw Dr. Sova, the physical medicine and rehabilitation specialist. Plaintiff indicated to Dr. Sova that: "She started PT and completed a month of it a month ago. She thought it was helpful in the beginning but became more challenging towards the end. She continues to have fatigue and brain fog. She has trouble concentrating. These symptoms have improved compared to where it was before but it is variable." AR 1199. At that same visit, she noted that she "is no longer as fatigued. She still has to be careful about pacing herself. She reports that the brain fog continues to improve as well." *Id.* As at the prior visits, Dr. Sova's notes from his physical exam noted:

> Cognition, emotion and behavior:
> Overall Cognitive Status: intact
> Orientation Level: Alert and Oriented X3 (time, place, person)
> Following Commands: Follows simple one-step and multi-step commands, and directions without difficulty
> Evidence of aphasia, agnosia, and neglect is absent.
> Behavior is appropriate. No signs of agitation or motor restlessness

AR 1200–01.

On July 7, 2022, Plaintiff had a telehealth visit with Dr. Pressman. The notes reported: "She has difficulty processing simple instructions. SLP stopped due to insurance reasons. After 20

minutes she lost concentration. The therapist did give her strategies, for example, to always walk around with a notepad. Her memory has been getting better, particularly on the days she gets more sleep." AR 1508.

On July 25, 2022, another Reliance Standard nurse, Renee Phillips, RN, BSN, opined that Plaintiff's failed sympathetic and parasympathetic nervous system would require her to avoid "prolonged sitting." AR 0134. She said, "by 6/6/22 headaches appears [sic] reasonably controlled with currents [sic] treatment plan. There are reports of no longer fatigued, brain fog improving, acupuncture has helping [sic] fatigue, headaches less severe, and capable of doing more physically and mood has improved. Tilt table testing suggest failure in both sympathetic and parasympathetic nervous system. While there is multi-level degenerative changes in cervical spine, there is no indication of cord compression. Beyond 6/6/22, claimant appears capable of sedentary exertion with ability to frequently change positions. Significant improvement is unlikely." *Id.*

On August 1, 2022, Plaintiff had another telehealth visit with Dr. Pressman. The notes reflect: "[Plaintiff] will be leaving on 8/4/2022 for a trip to Singapore to visit her sister, and plans to return on 8/22/2022." AR 1508. There is no further mention of the trip in the treatment notes, other than an indication that Plaintiff was wary about flying internationally without treating a sinus infection, *id.*, and a note that Dr. Pressman prescribed Paxlovid prophylactically, in case Plaintiff contracted COVID-19 again while abroad, AR 1513.

On September 9, 2022, Plaintiff had another visit with Dr. Pressman at which Dr. Pressman prescribed a new medication, Methylphenidate HCI, to treat her "cognitive dysfunction." AR 1509.

In the notes from Plaintiff's October 14, 2022, visit with Dr. Pressman, Dr. Pressman noted, "She continues to have signfiiact [sic] cognitive dysfunction. She has difficulty processing simple

instructions. After 20 minutes she loses concentration. Her memory is still quite poor. I wonder if a small dose of stimulant could help with her cognitive dysfunction and chronic fatigue. She will start methylphenidate 5 mg daily, and then increase to twice a day if tolerated. We discussed the potential side effects." AR 1680–86.

On November 15, 2022, Reliance Standard issued its initial letter stating that it was "unable to approve benefits beyond October 28, 2022." AR 0364–70.

After the initial denial, during the pendency of her appeal, Plaintiff again submitted a number of additional medical records both pre-dating and post-dating the denial, which are summarized below as they pertain to her cognitive capacity:

- Speech language pathology records from an evaluation conducted by SLP Isaacs on October 3, 2022 (twenty-five days before the termination date for the LTD benefits), where Plaintiff again underwent a battery of cognitive tests, which documented learning and memory issues, poor attention, and impaired visuospatial skills. AR 1719–25.

- Plaintiff saw Dr. Sova again on October 4, 2022, and the notes indicated: "At the last appointment her brain fog was significantly improving but unfortunately since the last appointment her brain fog increased. She re-started SLP yesterday and the plan is to have sessions twice a week." AR 1901–10.

- Records from visits with Dr. Pressman in late 2022 and early 2023 reflecting worsening brain fog. AR 2003.

- Reports from Plaintiff's treating practitioners, including Dr. Della Penna, a psychiatrist, Michelle L. Backe, a psychotherapist, and Dr. Pressman, indicating their opinions that Plaintiff was cognitively incapable of fulfilling the complex requirements of her prior work. AR 2047–48; AR 2044–46; AR 2050–52.

Despite reviewing these and other records, after submitting Plaintiff's medical file for two independent physician reviews and an occupation analysis review with a vocational rehabilitation specialist, on June 19, 2023, Reliance Standard denied Plaintiff's appeal and affirmed its decision to terminate benefits as of October 28, 2022. AR 0384–91. This lawsuit ensued.

II.    **Standard of and Framework for Review**

The parties dispute the appropriate mechanism for this Court's consideration of this motion, although they agree with the basic proposition that Reliance Standard's determination is subject to review for abuse of discretion. ECF 13 at 3; ECF 29 at 4. Under that standard, to be affirmed, "the administrator's decision must result from a deliberate, principled reasoning process and be supported by substantial evidence." *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 629 (4th Cir. 2010) (internal quotation marks and citation omitted). Substantial evidence is that which will "appear substantial when viewed, on the record as a whole" by the court. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 490 (1951). If those prongs are met, then the administrator's decision is reasonable and will not be disturbed, "even if [the court] would have come to a contrary decision independently." *Williams*, 609 F.3d at 630.

As the Fourth Circuit has explained, several nonexclusive factors are relevant to considering the reasonableness of a determination, including whether it (1) adheres both to the text of ERISA and the plan; (2) rests on good evidence and sound reasoning; and (3) results from a fair and searching process. *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322–23 (4th Cir. 2008). In another case, the Fourth Circuit provided a more detailed list of eight nonexclusive factors to consider ("the *Booth* factors") including the language of the plan, its purposes and goals, the adequacy of the materials used to make the decision and the degree to which they support it, whether the fiduciary's interpretation was consistent with other interpretations of the plan, the reasoned and principled nature of the decision-making process, the consistency with the requirements of ERISA, any relevant external standards, and the fiduciary's motives and any conflict of interest. *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare*

*Plan*, 201 F.3d 335, 342–43 (4th Cir. 2000). Both parties use the *Booth* factors to argue their respective positions in this case. *See generally* ECF 13, 29.

While the parties are generally in agreement with the standards and factors that should be applied in this Court's abuse of discretion review of Reliance Standard's determination, they disagree regarding the appropriate framework for that consideration. In a recent ERISA denial-of-benefits case in which the district court conducted a *de novo* review of the plan administrator's findings, the Fourth Circuit noted that it has long "questioned the propriety of employing summary judgment in the ERISA-benefit-denial context." *Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 959 (4th Cir. 2022). The Fourth Circuit "decline[d] to endorse the quasi-summary-judgment procedure" that other circuits have used to reconcile the typical summary judgment analysis with the review of an administrative record that occurs in an ERISA case. *Id.* Instead, recognizing that these cases generally require courts to "resolve competing factual contentions within the administrative record about the cause, severity, or legitimacy of an individual's impairment," the Fourth Circuit recognized that "the court's role at the summary judgment stage is not to resolve disputed questions of fact." *Id.* at 960. The Fourth Circuit determined that the "Federal Rules of Civil Procedure already provide a mechanism for district courts to resolve disputed facts and render a judgment, and that mechanism was employed by the district court here: a Rule 52 bench trial." *Id.* at 961. As a result, the Fourth Circuit held that in the context of *de novo* review in ERISA denial-of-benefits cases, "[w]here there are disputed issues of material fact, a Rule 52 bench trial, which will typically be limited to the administrative record that was before the plan administrator, is appropriate." *Id.* (footnote omitted)

Reliance Standard correctly notes that the Fourth Circuit did not opine that Rule 52 is the proper mechanism to use in a case, like this one, which is subject to an abuse of discretion review

instead of a *de novo* review. *See id.* n.5 ("Because the district court employed de novo review and neither party challenged the use of that standard, we express no view on the appropriate procedural mechanism for resolving cases in which review in the district court is for abuse of discretion."). Of course, it is unusual to conduct a "trial" under an abuse of discretion standard—in other words, where this Court's "factual findings" must be made while affording appropriate deference to the reasonable factual findings made by the plan administrator, even if this Court would have reached a different result. While neither Rule 52 nor Rule 56 provides an ideal mechanism for the resolution of this case, on balance this Court believes that a Rule 52 trial conducted on the papers, while carefully adhering to the abuse of discretion standard, is the better course. This case, like *Tekman,* involves factual disputes about the continuing existence and severity of Plaintiff's cognitive impairments, and requires this Court to make certain findings of fact in its analysis. Under the Fourth Circuit's guidance in *Tekman*, then, summary judgment is simply inappropriate. Moreover, were this Court to deny summary judgment because of the existence of factual disputes, the case would presumably be submitted for disposition in a Rule 52 bench trial. This Court sees no reason to rule twice. Instead, this Court will consider the record in this case as a trial on the papers consistent with Federal Rule of Civil Procedure 52, mindful of the abuse of discretion standard and the deference that must be afforded to the plan administrator's decision under that standard.

## III.    ANALYSIS

### A.  Abuse of Discretion

To reiterate, this Court must assess whether Reliance Standard's decision resulted "from a deliberate, principled reasoning process" and was "supported by substantial evidence." *Williams*, 609 F.3d at 630 (internal quotation marks and citation omitted). While this Court would make such a finding regarding Reliance Standard's evaluation of Plaintiff's physical and psychiatric

capabilities, this Court concludes that Reliance Standard's reasoning process fell short with respect to her cognitive capacity and that its findings were not supported by substantial evidence in that regard.

Before turning to the *Booth* factors, this Court will provide brief summaries of the conclusions reached by Reliance Standard in denying Plaintiff ongoing benefits and the evidence it relied upon to reach those conclusions, specifically focusing on Plaintiff's cognitive capacity. In its initial November 15, 2022, denial decision, Reliance Standard found, in conclusory terms, "no clinical evidence of ongoing . . . cognitive impairment that would preclude [Plaintiff] from performing a full time sedentary occupation." AR 0368. In making that finding, Reliance Standard failed to consider the report it had summarized in the immediately preceding paragraph, in which it stated that on September 9, 2022, "Dr. Pressman noted [Plaintiff] ha[s] cognitive dysfunction and prescribed Methylphenidate." *Id.* While the inconsistency potentially results from a rigid definition of "clinical evidence," a deliberate, principled reasoning process would have confronted the treating physician's very recent prescription of a new medication for cognitive dysfunction.

In its November 15, 2022, denial, Reliance Standard's analysis also contained a basic logical fallacy. It reasoned: sedentary occupations require a certain physical capacity, you are capable of meeting those physical requirements, your regular occupation is sedentary, therefore you can perform your occupation. *See id.* The problem is that, using that analysis, Reliance Standard failed to consider the specific cognitive (not merely the physical) requirements of Plaintiff's regular occupation. "Sedentary occupations" run the gamut from jobs with very few cognitive requirements, which could be performed with someone who meets the physical capacity for sedentary work, to very extensive cognitive requirements, which can only be performed by a person with the appropriate physical *plus* cognitive capabilities. Plaintiff's senior engineering

position is certainly on the higher end of that wide range. The logical fallacy in Reliance Standard's reasoning compounded its failure to confront the evidence of Plaintiff's continuing cognitive dysfunction and resulted in a determination unsupported by substantial evidence.

Reliance Standard included a somewhat more comprehensive analysis in its June 19, 2023, appeal denial decision. *See* AR 0384–91. Once again, however, that letter reflects that the vocational specialist identified Plaintiff's prior engineering position as "a sedentary position," listing only the physical requirements of the job without any job-specific cognitive demands. AR 0385. The appeal letter then cites to Reliance Standard's own decision, based on "an internal clinical review," that "[t]here are [sic] no clinical evidence of ongoing psychiatric or cognitive impairment that would preclude her from functioning ongoing. [sic]" AR 0385–86. That "internal clinical review" cited to (1) "no strong clinical evidence of functional impairment beyond June 9th," (2) Plaintiff's "reported improvement of symptoms around 06-2022," and (3) Plaintiff's international travel for three weeks in August, 2022, "which shows her ability to function (mentally and physically) at least at sedentary level ongoing." *Id.*

This Court does not find that either of the latter two factors cited by the "internal clinical review" are persuasive. As summarized above, while Plaintiff told Dr. Sova in late May, 2022 that she "is no longer as fatigued" and that "the brain fog continues to improve as well," she indicated in that same visit that her symptoms of fatigue, brain fog, and trouble concentrating continued and "have improved compared to where it was before but it is variable." AR 1197, 1199. There do not seem to be any particular records reflecting sustained improvement in or around early June, 2022, and in fact, records from Plaintiff's visit to Dr. Pressman in July, 2022 reflect ongoing issues with cognitive functioning. *See* AR 1508. With respect to Plaintiff's August, 2022 trip, the only information contained in the record is the single sentence in Dr. Pressman's report noting that

Plaintiff "will be leaving on 8/4/2022 for a trip to Singapore to visit her sister, and plans to return on 8/22/2022." *Id.* There is no indication regarding who else (if anyone) would be traveling with Plaintiff, what degree of planning (if any) Plaintiff needed to undertake, the activities that Plaintiff would do overseas, or anything else that might reflect the mental or cognitive burden of such a trip. Traveling in a group can require very little cognitive capacity, while navigating an airport in a foreign country and navigating the country alone would reflect some greater abilities.[3] Reliance Standard does not cite to any information allowing it to make that distinction. While this Court agrees that the trip, standing alone, indicates the physical capacity to endure a lengthy plane flight, no fair conclusions can be drawn from the sparse record about this trip regarding Plaintiff's cognitive capacity. Moreover, other courts have agreed that international travel for a leisurely vacation or to visit relatives is not inconsistent with disability. *See, e.g.*, *Solnin v. Sun Life & Health Ins. Co.*, No. 08-cv-2759 (DRH) (AYS), 2015 WL 6550549, at *12 (E.D.N.Y. Oct. 28, 2015), *aff'd*, 672 F. App'x 121 (2d Cir. 2017); *Doe v. Unum Life Ins. Co. of Am.*, 35 F. Supp. 3d 182, 194 (D. Mass. 2014); *Mohamed v. Metro. Life Ins. Co.*, No. 10 Civ. 7249 (PKC), 2012 WL 315868, at *8 (S.D.N.Y. Feb. 2, 2012).

Reliance Standard's June 19, 2023, denial letter went on to summarize the independent physical reviews conducted by two physicians. *See* AR 0386–89. One, Dr. Mauro Zappaterra, is board certified in Physical Medicine and Rehabilitation, and the other, Dr. Brandon Erdos, is board certified in Psychiatry. AR 0386. Dr. Zappaterra's report reflects an exhaustive view of the medical evidence, to include the October, 2022 cognitive evaluation from SLP Isaacs. AR 2013–15, 2019. Dr. Zappaterra noted that SLP Isaacs had diagnosed "brain fog and memory deficit." AR 2019.

---

[3] In fact, the record demonstrates that Plaintiff was raised in Singapore and therefore, would likely have been familiar with travel to, and in, the country. AR 0681, 0801.

Dr. Zappaterra summarized the records indicating that the return to SLP treatment had "caused headache and fatigue to return." AR 2020. Dr. Zappaterra also spoke with Dr. Pressman and learned that Plaintiff "has difficulty with simple cognitive tasks, extreme fatigue" and "[m]ore than half days of the month there is severe migraines, severe fatigue, and severe brain fog." AR 2024. Dr. Pressman also told Dr. Zappaterra that Plaintiff "had a neurocognitive evaluation on February 14, 2023, and the [Plaintiff] was concluded to have mild neurocognitive disorder." *Id.* While Dr. Zappaterra concluded that Plaintiff could meet the physical requirements of work at the sedentary level, he noted at two points in his report, "The [Plaintiff] does have mild neurocognitive impairment, and therefore evaluation from a neuropsychological perspective may be recommended."[4] *Id.*; *see* AR 2026.

In his report, Dr. Erdos was asked to determine whether "the medical information support[s] severity of psychiatric symptoms and resulting psychiatric functional limitations sufficient to preclude working 10/28/2022 ongoing?" AR 2010. His response, citing to the medical records, found insufficient documentation of such "psychiatric functional limitations," but makes no reference to cognitive limitations. AR 2010–11. In fact, the word "cognitive" does not appear in the discussion section of Dr. Erdos's report. *Id.*

When Plaintiff received the initial reports from Drs. Erdos and Zappaterra, she submitted supplemental reports from three of her treating health care providers relating in part to her cognitive capabilities. AR 2047–48 (Della Penna); AR 2044–46 (Backe); AR 2050–52 (Pressman).

---

[4] This Court is not suggesting herein, and does not read Dr. Zappaterra's report to be suggesting, that Reliance Standard had an obligation to have Plaintiff personally examined by a neuropsychologist. The issue is whether review of the medical evidence by a person with neuropsychological expertise was needed to give Reliance Standard a basis for evaluating Plaintiff's cognitive capacity. Instead, Reliance Standard retained two specialists in other areas who offered no opinion on the issue.

In response, Reliance Standard provided those rebuttal materials to Drs. Erdos and Zappaterra and asked for addenda to their reports.

Dr. Zappaterra's addendum stated:

All the additional medical records were reviewed. From a physical medicine and rehabilitation perspective this does not change the opinion. I defer comments regarding any psychiatric conditions as it is outside the area of my specialty. There is a statement that the review is grossly inadequate and incomplete, particularly pertaining to psychiatric history. The claimant has a history of major depression disorder which is severe. Furthermore, although there is reference to being able to lift and carry up to 10 pounds, reach overhead, work on ladders, or operate heavy machinery, the provider states that these are irrelevant to the job demands of the claimant, as the job requires highly complex cognitive processing and organizational leadership skills. There is documentation that her memory both short and long term is quite poor. However, as was stated in the prior review, "evaluation of the medical records by a neuropsychologist is recommended." In addition, evaluation from a psychiatrist for mental health issues is recommended as well.

AR 2059.

In his own addendum, Dr. Erdos affirmed his prior determination regarding a lack of "impairments associated with psychiatric conditions," but once again made no reference to cognitive functioning. AR 2053–55. He wrote:

Addendum documentation was considered with respect to the entirety of the previously reviewed documentation. The addendum information providing insight included attending physician letters by the claimant's treating psychiatrist, Dr. Penna, and therapist, Ms. Backe, LCSW-C, in requests for reconsideration of the prior determination. Both providers identified that the claimant's reported symptoms impact functionality and the ability to be successful in her role of employment. While the treating providers opine impairment in functionality, the letters did not provide the additional necessary objective evidence to warrant a change to the prior determination. There are no direct behavioral observations noted of acutely impairing psychiatric conditions. There are no formal examinations, neuropsychiatric testing, psychological assessments or other objective evidence to demonstrate the presence of acute psychiatric symptomatology. Additionally, there are no examination findings nor indication of treatment requested or required of the claimant that would be considered typical should she have impairing psychiatric symptoms. Thus, the additional documentation provided does not warrant a change to the original determination. It remains the outcome of this review that there are no impairments associated with psychiatric conditions for the timeframe of 10/28/2022 and ongoing.

16

AR 2054.

### B. *Booth* Factors

#### 1) Language of the Plan

Reliance Standard's analysis disregarded the language of the Plan requiring it to evaluate Plaintiff's ability to perform the material duties of her "regular occupation." Though the Plan gives Reliance Standard broad "discretionary authority to interpret the Plan . . . and determine eligibility for benefits," AR 0014, courts must read such contractual language "in the context of ERISA and its purposes," *Booth*, 201 F.3d at 343. And, as the Fourth Circuit articulated, "ERISA [does not] allow a plan to alter the established standard of judicial review of discretionary decisions for reasonableness." *Id.* Here, Reliance Standard simply looked just at the physical requirements of a sedentary occupation and not at the specific duties and associated cognitive requirements of her job (whether considering her job from a managerial and planning perspective or even just the role of a "software engineer"). *See, e.g.*, *Lacko v. United of Omaha Life Ins. Co.*, 926 F.3d 432, 442 (7th Cir. 2019) (explaining why the failure to address an ability to meet mental demands of occupations with significant cognitive requirements is deficient). This factor therefore weighs in favor of finding Reliance Standard's decision unreasonable. *See Booth*, 201 F.3d at 343 ("It would be incongruous to interpret the Plan documents before us as additionally conferring such broad discretion on its administrator as to sanction determinations that would not withstand analysis using the reasonableness factors that have been recognized . . . in the Fourth Circuit.").

#### 2) Purposes and goals of the Plan

This factor is neutral. The purposes and goals of the LTD Plan are to provide income protection to persons who are unable to work because of a medical condition. Here, the parties disagree regarding Plaintiff's residual capacity to perform her regular occupation.

### 3) Adequacy of materials considered and degree of support

On this factor, this Court concludes that Reliance Standard did not adequately consider the materials presented by Plaintiff throughout the course of the evaluation process. Reliance Standard apparently conducted its own review of Plaintiff's medical information, but the thoroughness of that review is unclear. Just before Reliance Standard's nurse, Myrrah Galicia, RN, BSN, opined that there was "no clinical evidence of ongoing . . . cognitive impairment," AR 0136, Plaintiff had provided two notes from Dr. Pressman showing new prescribed treatment for cognitive dysfunction, *id.*, AR 1509, a report of increased brain fog, and a baseline estimate of mental capacity at 50%, AR 1683. While it is unclear whether the reports are based on Plaintiff's own statements or physician observation, either can constitute valid evidence that should be weighed, particularly in light of the prescribed medication. Nurse Galicia simply opined that there was "no clinical evidence of cognitive impairment" without discussing that evidence at all. AR 0136. And by the time Reliance Standard decided the appeal, the record contained even more clinical evidence including new cognitive testing by SLP Isaacs showing impaired function. There is no evidence that Reliance Standard took that information into account.

Additionally, Reliance Standard does not clearly set forth any grounds on which it based its conclusion about Plaintiff's cognitive abilities. This Court is not persuaded that the opinions from Drs. Zappaterra or Erdos contain evidence relevant to Plaintiff's ability to meet the cognitive functioning requirements of her regular occupation. Dr. Zappaterra expressly does not address cognitive functioning, other than making the repeated suggestion that the medical evidence should be assessed by a neuropsychologist to evaluate cognitive limitations. And Dr. Erdos makes no reference to cognitive functioning whatsoever in the "Discussion" section of his report. The only appearance of the word "cognitive" in his report is in the summary of medical records, when he

notes that Dr. Pressman prescribed medication in September, 2022 for "assistance with cognitive dysfunction," AR 2008, and that Drs. Pressman and Della Penna reported ongoing difficulties with processing and concentration.

While this Court agrees with Reliance Standard that "the primary responsibility for providing medical evidence to support a claimant's theory rests with the claimant," ECF 29 at 7 (quoting *Harrison v. Wells Fargo Bank, N.A.*, 773 F.3d 15, 21 (4th Cir. 2014)), Plaintiff provided such medical evidence in this case in the form of several cognitive evaluations and a multitude of reports from treating physicians. Reliance Standard apparently discounted the evidence without specifying why, and offered no other evidence to suggest that Plaintiff's cognitive abilities would permit her to perform her regular occupation. This factor therefore weighs heavily in Plaintiff's favor even under an abuse of discretion standard because Reliance Standard lacks substantial evidence to support its conclusion.

### 4) Consistency of interpretation with other provisions in the Plan

This factor is not particularly applicable in this case and is weighed as neutral.

### 5) Reasoned and principled decision-making process

As partially described above, this Court finds that, as to Plaintiff's cognitive limitations, Reliance Standard failed to engage in a reasoned and principled decision-making process. In this Court's view, three different aspects of its analysis fell short. First, Reliance Standard failed to engage with or reference the ample evidence in the record of ongoing cognitive dysfunction in the fall of 2022, to include Plaintiff's objective test results and the prescription of medications. Second, Reliance Standard used independent medical reviewers in the wrong specialties and disregarded the repeated recommendation from its own independent medical reviewer, Dr. Zappaterra, that Plaintiff's records needed to be reviewed by a neuropsychologist to assess her cognitive

limitations.[5] Reliance Standard offered no similar evidence on the issue that could substitute for that type of review in any reasoned way. And third, Reliance Standard's repeated citation to Plaintiff's trip to Singapore undermined its process for the reasons described above—the cursory information regarding the trip provides no information regarding Plaintiff's cognitive abilities.

6) **Consistency with the procedural and substantive requirements of ERISA**

Reliance Standard's failure to conduct a full and fair review of Plaintiff's claims about her cognitive dysfunction, using a reasoned and principled process, is inconsistent with the requirements of ERISA. As the Supreme Court recognized in *Metropolitan Life Insurance Co. v. Glenn*:

> ERISA imposes higher-than-marketplace quality standards on insurers, requiring a plan administrator to "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the [plan's] participants and beneficiaries[]"; underscoring the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials"; and supplementing marketplace and regulatory controls with judicial review of individual claim denials[.]

554 U.S. 105, 115 (2008) (alterations in original) (internal citations omitted).

Reliance Standard's assessment cannot be described as "higher-than-marketplace quality" here for the reasons discussed above.

7) **External standard relevant to exercise of discretion**

This factor is not particularly applicable in this case and is weighed as neutral.

---

[5] To the extent that Reliance Standard believed that the cognitive issues fell under the umbrella of a psychiatric condition, it should have recognized the error when Dr. Erdos never used the word "cognitive" in his assessment and when Dr. Zappaterra specified, in his addendum, that both a neuropsychological and a psychiatric referral would be warranted to evaluate Plaintiff's issues. AR 2059.

### 8) Fiduciary's motives and conflict of interest

As in all cases where the plan administrator is also the payor of benefits, Reliance Standard has a conflict of interest in this case: it is charged with making the determination regarding the payment of benefits and with paying the benefits if they are awarded. While Reliance Standard's conflict of interest is not determinative, this Court must consider it as one of several factors in making its determination regarding whether Reliance Standard abused its discretion. *See Booth*, 201 F.3d at 342–43. This Court weighs this factor as tilting slightly in favor of Plaintiff, particularly given the deficiencies leading this Court to conclude that Reliance Standard did not conduct an appropriate investigative process regarding Plaintiff's cognitive abilities and did not rest its determination on substantial evidence.

### C. Appropriate Remedy

Plaintiff contends that, upon a finding that Reliance Standard abused its discretion in denying LTD benefits to Plaintiff, this Court should award "all benefits through the date of judgment and require Reliance Standard to continue paying her benefits." ECF 30 at 14. Essentially, however, this Court's conclusion is that Reliance Standard failed to address Plaintiff's cognitive capabilities appropriately when making its assessment. This Court has not reached and does not believe it appropriate to reach, in the first instance, the issue of Plaintiff's ability to perform either her regular occupation or, certainly, any occupation. *See Lacko v. United of Omaha Life Ins. Co.*, 926 F.3d 432, 447 (7th Cir. 2019) ("The most common remedy when an ERISA plan administrator's benefits decision is deemed arbitrary is to remand the matter for a fresh administrative decision, rather than to grant an outright award of benefits, and we believe that is the appropriate remedy here." (citations omitted)). Thus, this Court believes remand to the plan fiduciary to conduct the appropriate process and make the appropriate determinations is the proper

course of action. This Court will retain jurisdiction in this matter such that if future disputes arise following remand, the case can be reopened for this Court to consider those contentions.

## IV.    CONCLUSION

For the foregoing reasons, this Court concludes, following a bench trial on the record pursuant to Fed. R. Civ. P. 52, that Reliance Standard abused its discretion in denying Plaintiff LTD benefits because it lacked substantial evidence that Plaintiff could fulfill the cognitive requirements of her regular occupation. This Court therefore grants in part Plaintiff's dispositive motion, denies Reliance Standard's cross-motion for summary judgment, and remands the case to Reliance Standard for further proceedings in accordance with this opinion. A separate Order follows, which will administratively close this case, subject to reopening if either party wishes to bring forth new issues following remand.


Dated: June 21, 2024                              _____/s/_____
                                                  Stephanie A. Gallagher
                                                  United States District Judge